# Brickell and Hite *versus* Earley.

1. A constructive or resulting trust in land can arise only, when title has been derived through fraud, or through the purchase of it with the money of another.

2. No part of a parol trust can be left to inference; the proof to establish it must, in all particulars, be clear and specific.

3. A, B, and C, were tenants in common of a tract of land, out of which certain lots were excepted, which by agreement between them to perfect the title was sold at a tax sale and purchased in the name of A.   Subsequently the whole tract including the said excepted lots was sold at tax sale and purchased by D.   The said excepted lots were not redeemed and were conveyed by D to A., who denied any title or interest in them in B and C.   B and C therefore brought an action of ejectment against A for the undivided two thirds of these said excepted lots.   *Held (a)* that in the absence of fraud a proof that they had contributed money to the

purchase of these lots they could not recover. *(b)* That evidence was inadmissible to show that a surveyor employed by A to make a survey for A, B and C, had made a survey from the description in the deed which included the said excepted lots. *(c)* That the evidence of B was inadmissible, that both before and after the sale of the tract including the said excepted lots, A represented to him and C, that the purchase of these lots was to perfect the title to them and that they mutually agreed that the title should be so perfected, and this evidence followed by a letter from A to B, stating that D would assign the deeds of said excepted lots to A, B and C upon payment of the purchase money.

February 17th, 1887.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Elk county :*  Of July Term 1886, No. 115.

Ejectment by W. B. Brickell and P. Y. Hite against C. R. Earley for the undivided two thirds of forty one lots of land situate in the townships of Benzinger and Fox in the county of Elk.  Plea, not guilty.

The following are the facts of the case as they appeared on the trial before MAYER, P. J.:

The plaintiffs and defendant were tenants in common of a number of tracts of land.  Out of these lands former owners had conveyed to other parties, the lands described in the præcipe in this action, and these lands now sued for, were expressly excepted out of the conveyances upon which the common title of plaintiffs and defendant is based.

The sundry tracts sued for, were assessed to various parties, presumably the owners, and purchased by C. R. Earley in his own name at several tax sales.

In 1878 all these lands, as well as the lands of which plaintiffs and defendant were tenants in common, were sold for taxes ; all were bought by John G. Hall.  The lands in controversy were not redeemed, and on December 20th, 1880, after the titles had become absolute, Hall conveyed them by assignment to Earley.

The plaintiffs made the following offers of testimony:

We propose to prove by the witness on the stand, Mr. Willard, that he was employed as a surveyor by Dr. Earley with the general authority to make an examination of the lines and records and prepare a statement for Earley, Brickell & Hite ; that pursuant to that employment he did make and prepare a statement, which he now has and that he furnished a copy of that statement to Dr. Earley and that the lands in controversy were within the bounds of the survey made by him at that time or within the bounds of a paper description which he had before him, and that all was done at the request of Dr. Earley for Earley, Brickell & Hite.

Offer overruled and bill sealed for plaintiffs. (First assignment of error.)

Plaintiffs' counsel offered to prove by the witness on the stand, Brickell, that Dr. Earley, the defendant, represented to them at the time of the purchase and subsequently that there were a number of those tracts or parts of tracts the title to which was in doubt, and which he could perfect the title to by purchasing the same at treasurer's sales, and that an agreement was entered into between them that he should do so and that agreement was part of the original transaction, and that it was on the faith of those representations and believing that they would thus acquire a larger tract than expressed in the deed, that they went into the purchase with Dr. Earley. To be followed by letters from Earley showing that he was pursuing a line of policy in regard to obtaining the tracts at treasurer's sales which he had stated to them could be accomplished at the time they made the purchase.

Evidence excluded except as to the letters and bill sealed for plaintiffs. (Second assignment of error.)

Among the letters read in evidence was the following, known as "Exhibit No. 11."

OFFICE OF C. R. EARLEY,

RIDGWAY, Elk Co., Pa., June 26th, 1878.

W. B. BRICKELL, Esq.,

My Dear Sir:—Yours at hand. Mr. Hall will assign deeds at any time if money is paid at once, but if he pays out or has to raise the money, we must pay the twenty-five per cent. I have not seen Mr. Wilson since your letter came to hand. We cannot use the timber this winter and we cannot sell the bark this year. As to 6 per cent. for roads, &c., that should be in case of whole warrants. I see this warrant was put in net and there was a piece sold and I think there is no doubt that it has been reclaimed by tax titles; but we may have a suit about it and therefore if I take property without warrantee, I would not like to pay for that amount. You have the description then and if you are satisfied with the proposal you can send back if not all right; I am not particular; I have Wheeler & Woodward estimating pine on 4,377 and 4,389; Mr. Hyde offers to pay it. Have not been able to get 4,116 estimated yet. Can we do any better as to Fox?

Yours truly,

C. R. EARLEY.

Plaintiffs' counsel now propose to prove by Mr. Brickell that the letter of June 26th, 1878, being "Exhibit No. 11," in evidence, which recites the fact that Mr. Hall will assign deeds at any time if money is paid, etc., relates to the lands in contro-

versy so far as the same were purchased by Mr. Hall, and for the purpose of showing a recognition on the part of C. R. Earley of the plaintiffs' right to participate in the benefits of that tax sale and for the further purpose of showing in connection with other evidence and letters that the sale and purchase was in fact in the interest of all the tenants in common.

Evidence excluded and bill sealed for plaintiffs. (Third assignment of error.)

Plaintiffs' counsel offer to prove now by parol testimony that both before and since this tax sale took place at which Mr. Hall became purchaser, Dr. Earley declared to the parties in interest, the plaintiffs, the purpose for which the sale was conducted and that the purpose was the joint benefit of all, and to perfect the title in the interests of all.

Evidence excluded and bill sealed for plaintiffs. (Fourth assignment of error.)

At the close of the evidence the court granted on motion a compulsory nonsuit, and subsequently overruled a motion to take it off. The plaintiffs thereupon took this writ and assigned for error the action of the court in excluding their evidence as above shown and also in overruling their motion to take off the compulsory nonsuit.

*George A. Rathbun* and *J. M. F. Carpenter*, for plaintiffs in error.—There are a few well-settled principles of law which we think control this case, and the application of which must result in a reversal of the judgment.

1. If Earley purchased the lands originally for the joint benefit of all, he could not set up an adverse title to any of the lands as against the person in whose interest he bought. He was the recognized agent of all the purchasers. The measure of his duty was fidelity. How far he came up to this measure is shown by his present attitude toward the plaintiffs.

2. Having conveyed or purported to convey the lands in controversy to plaintiffs, he cannot now be permitted to set up title subsequently acquired, to defeat the title of his vendee. If authority be deemed necessary in support of so plain a proposition, we cite: Banks *v.* Ammon, 3 Casey, 172; Washabaugh *v.* Entriken, 10 Id., 78; Clark *v.* Martin, 13 Wr., 289.

As stated, the court below seemed to lose sight of the fact that plaintiffs were not setting up a claim of title hostile to defendant, but were simply demanding the right to share with him, as tenants in common. And entertaining this erroneous view of the case, it was, of course, logically correct to hold us to proof of title as against the world. That this ruling was erroneous, we think is quite clear under the authority of Keller *v.* Auble, 8 P. F. S., 412, in which it was held that Keller hav-

ing died in possession, his possession descended to his heirs, and whether his title was perfect or not, was not a subject of inquiry in an action by one of the heirs against another heir who claimed to have purchased a perfect title from a third party. See Lloyd *v.* Lynch, 4 C., 419; Davis *v.* King, 6 N., 261.

Our argument was and is, that as vendor of the title Earley was bound to defend it and could not acquire any title outstanding when he conveyed, as against his vendees. That both as grantor and tenant in common, he was bound to protect the plaintiffs. In support of this we cite the opinion of LEWIS, C. J., in Weaver *v.* Wible, 1 Casey, 272, which is a clear statement of the law abundantly sustained by authorities. In Van Horne *v.* Fonda, 5 Johns. Ch., 389, Chancellor KENT says: "Community of interest produces a community of duty, and there is no real difference on the ground of policy and justice, whether one co-tenant buys up an outstanding encumbrance or an adverse title to disseize and expel his co-tenant.

We offered to show by Earley's letters to plaintiffs, that he continued for some time to act in accordance with his agreement. The court allowed the letters to be read, but excluded parol evidence to show what lands were referred to therein. The ruling of the court could not be questioned, perhaps, if we were seeking to compel specific execution of a contract, but we were not. The letters showed beyond question that lands in which Earley, Brickell and Hite were jointly interested, had been sold for taxes. They showed that Earley drew upon Brickell and Hite for money to redeem these lands and our offer was to show that the lands referred to in the letters were the lands in controversy. Not that any one letter perhaps covered all, but that the correspondence referred to these tracts, to which Earley claims title adverse to us.

In a word, we did not wish to make title by parol, but merely to show that Earley had up to a recent date, recognized our rights as tenants in common. This we could do by showing that the letters referred to the land in suit. "Parol evidence is admissible to explain and define the subject-matter of written agreements:" Gould *v.* Lee, 55 P. & R., 109.

*John G. Hall* and *C. H. M'Cauley* for defendant in error.— By the plaintiffs' own showing the parties never were tenants in common. In the deeds on which the tenancy in common was founded these lands were excepted out. They did not by such deeds, get any title to these lands perfect or imperfect; they were not conveyed to them because they had been previously conveyed to other parties. There was, therefore, no relation between these parties that forbade Earley from purchasing these tracts for his own benefit.

But even if there had been a co-tenancy between the parties, that was dissolved as to these lands when the tax titles became absolute in John G. Hall. After that Earley could buy for himself: Reinboth *v.* The Zerbe Run Improvement Co., 5 Casey, 139.

This action is founded on an alleged title to these lands. It was incumbent on plaintiffs to prove that title. They proved by the express provisions of the deeds they offered, that these lands were not the subject of a co-tenancy between them and were in fact at the inception of the common title not owned by any of the three, but by other parties, that Earley afterwards acquired them in severalty, and then they offered to show parol declarations of Earley in various forms, on which they desire to predicate a trust in their favor. That this cannot be done is plain, and therefore the offers were properly rejected.

The plaintiffs having failed to show title, the nonsuit was properly entered.

Mr. Justice GORDON delivered the opinion of the court March 14th, 1887.

Admittedly the plaintiffs have no title to the lands in dispute unless they succeed in establishing a resulting trust arising from the fraud of Dr. Earley, the defendant. Whilst the plaintiffs and defendant were tenants in common as to several tracts of land, yet, as to the lots in dispute, they were not such, for these lots were expressly excepted out of the conveyances to them, so that nothing can be predicated of that relation in favor of the contention of the plaintiffs. As to these lots, either of the parties was at liberty to act for himself; he might buy one or all of them at treasurer's sale, or otherwise as he saw fit without consulting his fellows, since his act in this particular could not affect their rights.

How then does Dr. Earley become the trustee for Brickell and Hite? How does this alleged resulting trust arise? In order to sustain a proposition of this kind, the plaintiffs are bound to show that Earley obtained his title in fraud of their right, or that their money was used in its acquisition: Blyholder *v.* Gilson, 18 Pa., 134; Cross's Ap., 97 Pa., 471. But there is not even an offer to prove that so much as a dollar of the plaintiffs' money went into the purchase of the lands in controversy. Then again, when we turn to the charge of fraud, it is unsupported by a shadow of proof. On this head it is complained that the court overruled an offer to prove that Earley had employed Willard to make an examination of the lines and records of the company lands; that he did make such an examination, and that "these lands in controversy were within the bounds of the survey made by him at that time, or within

the bounds of a paper description which he has before him, and that all was done at the request of Dr. Earley for Earley, Brickell and Hite." But we are as obtuse as the court below in perceiving how this, if proven, would have manifested the fact that the defendant acquired title to these lands as a co-tenant or trustee. A fatal defect in the offer is that it does not propose to show anything as to the manner of the acquisition, and failing this it fails altogether : Cross's Ap., *supra.*

The next assignment is to the refusal of the court to permit the plaintiffs to prove, " by the witness on the stand, Brickell, that Dr. Earley, the defendant, represented to them at the time of the purchase and subsequently, that there was a number of those tracts, or parts of tracts, the title to which was in doubt, and which he could perfect by purchasing at treasurer's sale, and that an agreement was entered into between them that he should do so, and that agreement was part of the original transaction, and that it was on the faith of those representations, and believing that they would thus acquire a larger tract than expressed in the deed, that they went into the purchase with Dr. Earley. To be followed by letters from Earley showing that he was pursuing a line of policy, in regard to obtaining the tracts at treasurer's sale, which he had stated to them could be accomplished at the time they made the purchase."

It is enough to say with reference to this offer, that it is too indefinite in not specifying what those tracts, or parts of tracts, were. No part of a parol trust can be left to inference ; the proof to establish it must, in all particulars, be clear and specific. Moreover, there is nothing in the offer to show that the parties ever did come to any definite agreement concerning the matter. The offers in the third and fourth assignments are as ineffective as are the others. Admitting that Earley's letter (Exhibit 11), referred to these lands when it stated the fact, " Mr. Hall will assign deeds at any time if money is paid," yet, as there is no offer to show that they did pay the money to Mr. Hall, or that he did assign, the proposition comes to nothing. So, there was no significance in the fact that both before and after the sale to Hall, the defendant declared that the sale was for the joint benefit of the parties and to perfect their title. Earley could not thus compromise Hall, and when the treasurer's title was complete in Hall, he could sell to whom he pleased, and Earley, even though he had been a tenant in common with the plaintiffs in these very lands, could take from him a perfect title excluding his co-tenants: Lewis v. Robinson, 10 Watts, 354; Kirkpatrick v. Mathiot, 4 W. & S., 251. Nor can Earley's case be weakened by the showing that the plaintiffs had notice of Hall's purchase.

Parol trusts are not favorites, and unless the proof of them

[Bauder's Appeal.]

is clear and specific they will not be entertained. In the case in hand, assuming, as we must, the correctness of the plaintiffs' offers and proofs, and there is nothing in them that is distinct and definite. No specific tracts are defined, but "there were a number of those tracts, or parts of tracts, the title to which was in doubt," and for that reason they were allowed to go to sale, and were to be bought in by Dr. Earley. Indefinite as this statement is, yet it is very clear that no reference could have been had to the lots in controversy, for as they had no pretence of title, of that fact there could have been no doubt. So, with reference to Earley's letter of June 20th, 1878, it is not only not certain that the land in controversy is referred to, but the contrary. Mr. Hall had purchased not only these Earley lots, but also the lands belonging to the company, and it is evident that reference is made to the latter when it is said, "Mr. Hall will assign deeds at any time if money is paid at once, but if he pays out, or has to raise the money, we must pay the twenty-five per cent." This language refers to a redemption, and not to a purchase of property not theretofore belonging to the company. But it is useless to dwell upon this fruitless matter, for there is nothing in the case which tends to raise a resulting trust.

The judgment is affirmed.